UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
                                              :

DR. GERALD R. FINKEL, as Chairman of the Joint     :
Industry Board of the Electrical Industry,        :       19-cv-6260-ARR-RLM
                                              :

                Petitioner,             :       <u>NOT FOR ELECTRONIC</u>
                                              :       <u>OR PRINT PUBLICATION</u>

  -against-                         :
                                              :       <u>OPINION & ORDER</u>

ALLSTATE ELECTRIC CORP.,                :
                                            :

               Respondent.          :
--------------------------------------------------------------------- X

ROSS, United States District Judge:

      The Petitioner, Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry, moves for confirmation of an arbitration award against the Respondent, Allstate Electric Corp. Petitioner also seeks reimbursement for attorneys' fees and costs associated with bringing the instant petition. For the reasons set forth below, I confirm the arbitration award with two modifications, and I award Petitioner prejudgment interest calculated at a rate of nine percent per annum from October 15, 2019, through the date of judgment in this action. I further conclude that Petitioner is entitled to recover reasonable attorneys' fees and costs associated with the instant petition. I respectfully refer this matter to United States Magistrate Judge Roanne L. Mann for a Report and Recommendation regarding the appropriate amount of such fees and costs.

## BACKGROUND

      Petitioner is the Chairman of the Joint Industry Board ("JIB"), which is the administrator of various employee benefit multi-employer plans. Sessa Decl. ¶ 2, ECF No. 22; Resp't's Second Rule 56.1 Statement ¶ 2, ECF No. 29 ("Resp't 56.1").[1] These plans are established and maintained

---

[1] Rather than responding to Petitioner's Rule 56.1 Statement, *see* Pet'r's Rule 56.1 Statement, ECF

pursuant to a collective bargaining agreement between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union") and certain employer associations. Sessa Decl. ¶ 2; Resp't 56.1 ¶ 2.

JIB administers several of these employee benefit plans, including, among others, the Deferred Salary Plan of the Electrical Industry (the "DSP") and the National Electrical Benefit Plan (the "NEBF"). Sessa Decl. ¶ 3; Resp't 56.1 ¶ 3. Collectively, these plans are known as the "ERISA Plans."[2] Sessa Decl. ¶ 3; Resp't 56.1 ¶ 3. Pursuant to the governing collective bargaining agreement, signatory employers send their contributions to the ERISA Plans—except those to the DSP—directly to JIB every week. Sessa Decl. ¶ 4; Resp't 56.1 ¶ 4. Employers send their DSP contributions to Prudential Financial, Inc., which is JIB's third-party record keeper and investment manager. Sessa Decl. ¶ 9; Resp't 56.1 ¶ 9. JIB also collects what it calls "Non-ERISA Contributions," which consist of employee loan payments due to the Union and contributions that fund JIB's operations. Sessa Decl. ¶ 7–8; Resp't 56.1 ¶ 7–8. In addition, signatory employers collect a "Union Assessment" from each Union member-employee and send those assessments to JIB. Sessa Decl. ¶ 4; Resp't 56.1 ¶ 4. Thus, in sum, JIB receives Union Assessment remittances, Non-ERISA Contributions, and ERISA Plan contributions, excluding those to the DSP; JIB refers to these remittances and contributions collectively as the "JIB Contributions." Sessa Decl. ¶ 10; Resp't 56.1 ¶ 10. JIB refers to the JIB Contributions together with the DSP Contributions as the

---

No. 24, Respondent filed two documents that it labeled "Rule 56.1 Statement[s]" but that actually respond directly to two of Petitioner's declarations, *see* Resp't 56.1; Resp't's First Rule 56.1 Statement, ECF No. 28. These documents indicate, in correspondingly numbered paragraphs, whether or not the facts asserted in Petitioner's declarations are disputed. Thus, whether or not they are true Rule 56.1 statements, Petitioner's declarations and Respondent's so-called "Rule 56.1 Statements" have the same effect as do Rule 56.1 statements.

[2] "ERISA" stands for the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

"Required Contributions." Sessa Decl. ¶ 10; Resp't 56.1 ¶ 10.

Respondent is an employer and a member of the New York Electrical Contractors Association, Inc. (the "NYECA"). Sessa Decl. ¶ 11; Resp't 56.1 ¶ 11; *see* Falesto Decl. ¶ 9, ECF No. 26. As such, it is bound by any collective bargaining agreements between a group of Associations, including the NYECA, and the Union. Sessa Decl. ¶ 11; Resp't 56.1 ¶ 11. The Union and the Associations entered into a collective bargaining agreement that covered a term spanning from May 11, 2016 through April 10, 2019 (the "2016–19 CBA"). Sessa Decl. ¶ 12; Resp't 56.1 ¶ 12; *see* 2016–19 CBA, Sessa Decl. Ex. A, ECF No. 22-1. The Union and the Associations then negotiated a successor collective bargaining agreement, which covers April 10, 2019 through April 13, 2022 (the "CBA"). Sessa Decl. ¶ 13; Resp't 56.1 ¶ 13. Although the parties have not filed this successor agreement in connection with this case, they agree that Respondent "is currently bound" by it and that its terms are "collectively set forth" in the 2016–19 CBA and a Memorandum of Agreement that memorializes any new terms for the 2019–22 period. Sessa Decl. ¶¶ 13–14; Resp't 56.1 ¶¶ 13–14; *see* Mem. of Agreement, Sessa Decl. Ex. B, ECF No. 22-2.

The CBA requires that Respondent make the Required Contributions and submit the associated weekly payroll reports. *See* Sessa Decl. ¶ 15; Resp't 56.1 ¶ 15; 2016–19 CBA Article II §§ 3–9, 11; Mem. of Agreement.[3] The CBA also provides that

---

[3] Although the parties have not cited any particular CBA terms that require employers to make NEBF contributions to JIB, the CBA requires that employers forward payments to the NEBF's "designated local collection agent." 2016–19 CBA Articles VII, XV § 25. The parties agree that JIB is the collection agent for NEBF contributions. Sessa Decl. ¶ 4; Resp't 56.1 ¶ 4. Further, I note that if the Memorandum of Agreement that memorializes the new terms of the successor CBA modifies Respondent's obligations as set forth in the 2016–19 CBA, the parties have not made clear how it does so. Respondent has merely "refer[ed]" me to the 2016–19 CBA and the Memorandum of Agreement without citing or explaining any particular terms that it views as material. Resp't 56.1 ¶ 15. It is not obvious from the face of the Memorandum of Agreement which terms in particular have been modified for the 2019–22 term, or how so. Thus, I assume that Respondent does not dispute that it was responsible for making the "Required Contributions" as

> [t]he parties to this Agreement hereby agree to, and shall be bound by, the provisions of the Plan and Trust documents established and maintained for purposes of implementing the benefits provided for in this Agreement . . . including but not limited to, the delinquency and collection procedures of the Plan and the requirements of ERISA.

2016–19 CBA Article II § 12(a); Sessa Decl. ¶ 16; Resp't 56.1 ¶ 16. Accordingly, JIB established a Collection Policy governing the collection of delinquent contributions. Sessa Decl. ¶ 18; Resp't 56.1 ¶ 18; *see* Collection Policy, Sessa Decl. Ex. C, ECF No. 22-3. JIB also established Arbitration Procedures governing disputes over employer delinquencies and audits. Sessa Decl. ¶ 19; Resp't 56.1 ¶ 19; *see* Arbitration Procedures, Sessa Decl. Ex. D, ECF No. 22-4. The Arbitration Procedures grant jurisdiction to a neutral arbitrator to adjudicate any claims that JIB brings "against an Employer, related to the Employer's obligation to contribute to [employee benefit plans], including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorney's fees and costs[.]" Arbitration Procedures Articles I.D, I.K, II.A–B; Sessa Decl. ¶ 23; Resp't 56.1 ¶ 23. Pursuant to the Arbitration Procedures, "[i]f the Neutral Arbitrator finds in whole or in part for the JIB, the Employer shall be liable for the Neutral Arbitrator's fees and the JIB's attorney's fees and costs." Arbitration Procedures Article X.B; Sessa Decl. ¶ 24; Resp't 56.1 ¶ 24.[4]

The Collection Policy provides that, if an employer does not remit its contributions and does not submit payroll reports for those unpaid contributions, JIB "may use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer."

---

JIB has defined them.

[4] Respondent asserts, without citation, "that attorneys['] fees imposed must be reasonable." Resp't 56.1 ¶¶ 22, 24. The article of the Arbitration Procedures that governs fees and costs does not explicitly require that attorneys' fees awarded in an arbitration be reasonable. *See* Arbitration Procedures Article X. Respondent does not explain the basis for its assertion—or even mention attorneys' fees at all—in its brief. *See* Resp't's Mem. of Law, ECF No. 30. Because Respondent does not specifically argue that the attorneys' fees awarded for the arbitration at issue in this dispute were unreasonable, I find Respondent's assertion immaterial.

Collection Policy Article II.F.1; Sessa Decl. ¶ 20; Resp't 56.1 ¶ 20. The Collection Policy further provides that interest will be assessed on delinquent contributions and "shall be calculated at the rate set forth in Section 6621 of the Internal Revenue Code ('IRC')." Collection Policy Article II.E.1; Sessa Decl. ¶ 21; Resp't 56.1 ¶ 21. The parties agree that this interest calculation rate does not apply to the NEBF, "which has adopted a 10% interest rate[,]" though I note that this exception does not appear on the face of the Collection Policy article to which Petitioner cites. Sessa Decl. ¶ 21; Resp't 56.1 ¶ 21; *see* Collection Policy Article II.E.1. Finally, the Collection Policy provides that "[o]nce legal action is commenced, a delinquent employer shall also be liable for Liquidated Damages plus additional attorney's fees and costs incurred." Collection Policy Article II.E.2; Sessa Decl. ¶ 22; Resp't 56.1 ¶ 22. Respondent asserts, without citation to any evidence other than its own conclusory declaration, "that it is the policy of Petitioner to waive liquidated damages" and that "liquidated damages can be waived." Resp't 56.1 ¶¶ 20, 22; Falesto Decl. ¶ 3; *see* Rabinowitz Decl. ¶ 5, ECF No. 27 (asserting that award includes excessive liquidated damages). Petitioner responds that "JIB does not have a policy to waive liquidated damages." Second Sessa Decl. ¶ 8, ECF No. 31. Rather, "[a]s part of negotiated settlement agreements, JIB may agree to waive liquidated damages owed under the collective bargaining agreement and [Collection Policy] conditioned on an employer's full compliance with the agreement." *Id.*

Relatedly, the CBA provides that employers "shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages of 20%, in the event of entry of judgment against the Employer in an action or proceeding to collect delinquent contributions." 2016–19 CBA Article II § 12(a); Sessa Decl. ¶ 17; Resp't 56.1 ¶ 17. ERISA § 502(g)(2) provides that:

> [i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,

(B) interest on the unpaid contributions,
(C) an amount equal to the greater of—
(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26.

29 U.S.C. § 1132(g)(2).

Respondent did not remit its Required Contributions for the payroll week ending May 15, 2019 to the payroll week ending July 17, 2019. Sessa Decl. ¶ 25; Resp't 56.1 ¶ 25. Accordingly, Petitioner initiated arbitration before Stephen F. O'Beirne, Esq. Sessa Decl. ¶ 26; Resp't 56.1 ¶ 26. Petitioner notified Respondent of the arbitration by mailing a Notice of Intention to Arbitrate, along with a Statement of Claims, to Respondent. Sessa Decl. ¶ 26; Resp't 56.1 ¶ 26; Notice of Intention to Arbitrate, Sessa Decl. Ex. E, ECF No. 22-5 ("Notice"). The Notice indicates that Petitioner also faxed these documents to Respondent. *See* Notice 1. An arbitration hearing was scheduled for September 17, 2019. *See id.* At least five days before that hearing date, Petitioner mailed, faxed, and e-mailed Respondent its Prehearing Memorandum of Law. Sessa Decl. ¶ 27; Resp't 56.1 ¶ 27; Prehearing Mem. of Law 1, Sessa Decl. Ex. F, ECF No. 22-6 (indicating that Prehearing Memorandum of Law was faxed and e-mailed, in addition to mailed). At Respondent's request, the arbitrator adjourned the hearing to October 3, 2019. Sessa Decl. ¶ 28; Resp't 56.1 ¶ 28; Arbitrator's Opinion & Award 3 n.2, Sessa Decl. Ex. H, ECF No. 22-8; *see* Second Sessa Decl. ¶ 6. Respondent did not appear at the hearing. *See* Arbitrator's Opinion & Award 3–4.

At the hearing, Petitioner submitted a breakdown of the contributions that Respondent

owed. *See* Sessa Decl. ¶ 29; Resp't 56.1 ¶ 29. In particular, by the time that the hearing took place on October 3, 2019, Respondent had continued to fail to remit its Required Contributions through the payroll week ending September 25, 2019. *See* Sessa Decl. ¶ 29; Resp't 56.1 ¶ 29; Breakdown of Benefits Owed 1, Sessa Decl. Ex. G, ECF No. 22-7 ("Breakdown"). Petitioner presented evidence of the contributions that Respondent owed for the weeks ending May 15, 2019 through July 31, 2019 based on Respondent's payroll records. *See* Breakdown 1; Sessa Decl. ¶ 29; Resp't 56.1 ¶ 29. Petitioner presented estimates of the contributions that Respondent owed for the weeks ending August 7, 2019 through September 25, 2019 because Respondent had not submitted payroll reports for those weeks. *See* Arbitrator's Opinion & Award 4 n.3; Breakdown 1; Sessa Decl. ¶ 29. Respondent now contends—as it did not do at the arbitration hearing, where it never appeared— that it did not employ any Union employees after July 31, 2019, and that, accordingly, it is not responsible for any contribution deficiency after that date. Resp't 56.1 ¶ 29; Falesto Decl. ¶¶ 9– 11; Rabinowitz Decl. ¶ 5; Resp't's Mem. of Law 4, ECF No. 30 ("Resp't Br."). Other than the declarations of Respondent's president and attorney, the only evidence that Respondent now submits to support this contention is an e-mail dated April 30, 2020, from a person named Jeanette Delvalle stating that the payroll company had confirmed that "the last time an employee in local 3 was paid was on 7/31/19 (see below)[.]" Delvalle E-mail, Falesto Decl. Ex. A, ECF No. 26-1. The e-mail then includes what appears to be an excerpt from another e-mail from a payroll company representative to Delvalle, stating "[p]er my email on 3/4/20, the last week you paid an employee to the union was 7/31/19." *Id.*

Relying largely on the breakdown of owed payments that Petitioner submitted, *see* Arbitrator's Opinion & Award 4 (referring to an "Exhibit 3," which is the same document as the Breakdown cited above as Exhibit G to the Sessa Declaration); Falesto Decl. ¶ 8, the arbitrator

concluded that Respondent was liable as follows: (A) to pay JIB the principal amount of $284,919.62 in delinquent contributions for payroll weeks ending May 15, 2019 through and including September 25, 2019; (B) to pay JIB interest on those unpaid contributions in the amount of $34,438.62; (C) to pay Prudential the principal amount of $142,276.84 in delinquent contributions for the same payroll weeks; (D) to pay Prudential interest on those unpaid contributions in the amount of $20,700.25; (E) to pay JIB "additional interest on the unpaid contributions in the amount of" $6,597.35; (F) to pay JIB $688.50 for shortages and/or underpayments that the arbitrator had found for payroll weeks 27, 33, and 38 in the year 2018; (G) to pay JIB liquidated damages in the amount of $101,529.23; and (H) to pay JIB attorneys' fees, arbitration fees, administrative fees, and costs incurred in the arbitration in the amount of $22,014.96, Arbitrator's Opinion & Award 6. Thus, in total, the arbitrator found Respondent liable for $613,165.37. *Id.* at 6–7.

Respondent has since "failed to abide by the Award." Sessa Decl. ¶ 32; Resp't 56.1 ¶ 32. Accordingly, Petitioner filed a petition to confirm the arbitration award and now moves for such confirmation. *See* Pet. to Confirm Arbitration Award, ECF No. 1; Mot. to Confirm Arbitration Award, ECF No. 21. Respondent does not dispute that it owes some portion of the arbitrator's award; however, it asserts that it is not liable for certain "excess sums" and reiterates that "liquidated damages should be waived." Resp't 56.1 ¶ 33; *see* Sessa Decl. ¶ 33. In addition to maintaining that it is not liable for contributions after July 31, 2019, *see, e.g.*, Resp't 56.1 ¶ 29, Respondent asserts that "it appears that Petitioners sought audit deficiencies which were previously awarded in a prior audit[,]" *id.* ¶¶ 29, 31; Falesto Decl. ¶ 12. Respondent asked that Petitioner confirm that it is not seeking to recover these "audit deficiencies"—which amount to $79,761.19 owed over a period spanning from January 2014 through March 2017—in duplicate.

Falesto Decl. ¶ 12; Breakdown 1, 3. Petitioner responded that these audit deficiencies "were not sought as part of the arbitration and they do not make up a portion of the damages contained in the [arbitrator's award]." Pet'r's Reply Mem. of Law 5, ECF No. 34 ("Pet'r Reply"); *see* Second Sessa Decl. ¶ 2.

Respondent further asserts that the arbitrator found it liable for certain legal fees and costs that had already been awarded or paid in a separate proceeding. *See* Falesto Decl. ¶ 13; *see also* Resp't Br. 4. Petitioner concedes that a portion of the attorneys' fees that the arbitrator awarded is duplicative. *See* Second Sessa Decl. ¶¶ 3–7; Pet'r Reply 6. In fact, in connection with the 2019 arbitration, JIB incurred only $3,650 in fees and costs, and not the $22,014.96 that the arbitrator awarded. *See* Second Sessa Decl. ¶ 7; Breakdown 1. This lower figure represents the sum of the $1,400 arbitrator's fee for the canceled September 17, 2019 hearing, the $1,400 arbitrator's fee for the hearing held on October 3, 2019, an attorney fee of $600, and an administrative fee of $250. *See* Breakdown 1; Second Sessa Decl. ¶¶ 5–6.

## STANDARD OF REVIEW

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 . . ., provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citing *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990)); *see Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) ("*NFL*") (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)) ("Because this dispute involves the assertion of rights under a collective bargaining agreement, our analysis is governed by section 301 of the

LMRA.").[5] I treat a motion to confirm an arbitration award "as akin to a motion for summary judgment[.]" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, if the evidence that the non-moving party submits "is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249–50 (first citing *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam), then citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

"Normally, confirmation of an arbitration award is 'a summary proceeding that merely

---

[5] Petitioner purports to be bringing this action pursuant to both § 301 of the LMRA and § 502(a)(3) of ERISA, as amended, 29 U.S.C. § 1132(a)(3). *See* Pet'r's Mem. of Law in Supp. of Pet'r's Mot. to Confirm Arbitration Award 1, ECF No. 25 ("Pet'r Br."). In *Ottley v. Schwartzberg*, the Second Circuit concluded that "an action to confirm an arbitration award is not an appropriate vehicle for adjudication of ERISA claims for damages." 819 F.2d 373, 377 (2d Cir. 1987). Some district courts have subsequently cited *Ottley* for the proposition that they could not consider petitions to confirm arbitration awards pursuant to ERISA and that they would consider them solely pursuant to the LMRA instead. *See, e.g.*, *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Golden Dev. & Constr. Corp.*, No. 17-CV-1051 (VSB) (JLC), 2017 WL 2876644, at *2 (S.D.N.Y. July 6, 2017), *report and recommendation adopted by* 2017 WL 3309737 (S.D.N.Y. Aug. 2, 2017). However, *Ottley* is distinguishable from the instant case because in *Ottley*, the petitioner sought to confirm an arbitration award and also requested that, "[i]n the event that respondents opposed the petition, . . . [respondents] be required to pay damages authorized by the civil enforcement provisions of ERISA." 819 F.2d at 375 (citing 29 U.S.C. § 1132(g)(2)). The Second Circuit reasoned that whereas ERISA's civil enforcement provision "contemplates a formal adjudication[,]" an action to confirm an arbitration award is a "straightforward proceeding[] in which no other claims are to be adjudicated." *Id.* at 376–77. Thus, "in a confirmation proceeding, the court properly may consider only the statutory bases for modifying or vacating an award and challenges to the award's clarity." *Id.* at 377. Unlike in *Ottley*, here Petitioner asks only that I confirm the arbitrator's award and does not ask that I go beyond the scope of the confirmation proceeding to award it ERISA damages over and above what the arbitrator already awarded it. In any event, I do not need to decide whether ERISA, standing alone, authorizes me to confirm the arbitration award because it is clear that the LMRA provides me with that authority in this case.

makes what is already a final arbitration award a judgment of the court[.]'" *D.H. Blair*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). As such, "judicial review of an arbitration award is narrowly limited." *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991). Courts reviewing arbitration awards "have no business weighing the merits of the grievance[.]" *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). The district court's role is to ensure that the arbitrator "acted within the scope of the authority granted him by the parties" and that there is "at least a 'barely colorable justification for the outcome reached.'" *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Interior Cinema Inc.*, No. 15 Civ. 4616 (PAE), 2015 WL 6459261, at *4 (S.D.N.Y. Oct. 23, 2015) (quoting *Landy Michaels Realty Corp. v. Local 32 B–32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

A district court's review of an arbitration award is especially limited when the award arose from a labor dispute. In fact, "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *NFL*, 820 F.3d at 532. I must confirm a labor arbitration award as long as it "draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice[.]" *Id.* at 537 (quoting *Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)). "The United States Supreme Court has recognized that the LMRA expresses a 'federal policy of settling labor disputes by arbitration' which 'would be undermined if courts had the final say on the merits of the awards.'" *Finkel v. Pomalee Elec. Co., Inc.*, No. 16-4200 (DRH) (AKT), 2018 WL 1320689, at *5 (E.D.N.Y. Feb. 22, 2018) (quoting *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)), *report and*

*recommendation adopted by* 2018 WL 1318997 (E.D.N.Y. Mar. 14, 2018).[6]

## DISCUSSION

### I.     The petition to confirm the arbitration award is granted with two modifications.

As an initial matter, the arbitrator had the authority to hear this dispute. Under the Arbitration Procedures—which bound the parties pursuant to the CBA, *see* 2016–19 CBA Article II § 12(a); Sessa Decl. ¶ 16; Resp't 56.1 ¶ 16—a neutral arbitrator has jurisdiction to adjudicate any claims that JIB brings "against an Employer, related to the Employer's obligation to contribute to [employee benefit plans], including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorney's fees and costs[,]" Arbitration Procedures Articles I.D, I.K, II.A–B; Sessa Decl. ¶ 23; Resp't 56.1 ¶ 23. JIB's claim based on Respondent's failure to make the Required Contributions falls within this definition. The arbitrator also acted within his authority by conducting a hearing in Respondent's absence. The Arbitration Procedures provide that "[t]he failure of a party to appear at a hearing properly scheduled under these Procedures . . . shall in no way limit the Neutral Arbitrator's authority to hear Disputes and render a fully binding ruling on all parties, and shall in no way limit the non-appearing party's liability." Arbitration Procedures Article II.D. When an employer does not appear at an arbitration hearing, the arbitrator "may find

---

[6] Respondent argues that a different standard governs, writing that "[a]n arbitral decision may be vacated when an arbitrator has exhibited a 'manifest disregard of law.'" Resp't Br. 4 (citing *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002)). However, this standard, standing alone, does not govern on a motion to confirm an arbitration award; rather, an arbitrator's manifest disregard of the law is one, "judicially-created" ground for *vacatur* that the Second Circuit has examined alongside other grounds explicitly set forth in the Federal Arbitration Act, 9 U.S.C. §§ 1–307. *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121–22 (2d Cir. 2011). Even if I assume that this "manifest disregard of law" standard does govern here, I could not find any basis on which to conclude that the arbitrator manifestly disregarded the law, as Respondent puts forth the mere conclusory argument that it "does not doubt that the arbitrator knew the rules of law but disregarded their application and/or failed to review Petitioner's calculations or failed to properly calculate himself." Resp't Br. 4.

that the Employer's liability as alleged by the JIB is established. In that case, the arbitrator may base the amount of the award to the JIB on the damages proven by the JIB by a preponderance of the evidence submitted by the parties." *Id.* Article VIII.B.

The arbitrator properly relied on the evidence that JIB submitted in finding for JIB and crafting his award. *See Pomalee*, 2018 WL 1320689, at *8 (quoting *D.H. Blair*, 462 F.3d at 110) (finding that arbitrator's reliance on evidence submitted by petitioner "provide[d] more than 'a barely colorable justification for the outcome reached'"). The arbitrator found that the CBA bound Respondent and required it to submit payroll reports and benefit contributions to the plans that JIB administered. *See* Arbitrator's Opinion & Award 1–3, 3 n.1. He reviewed JIB's evidence of the amounts that Respondent owed—including an "updated summary sheet" that evidenced payments made, delinquencies, interest, and liquidated damages through the day prior to the hearing—and found it "accurate and in compliance with the requirements of the CBA," ERISA, and other pertinent governing documents. *Id.* at 3–4. He also found that Respondent did not object to any of Petitioner's evidence or move to stay the arbitration, had never before disputed the amounts that JIB claimed it owed, and, in fact, did not appear in the arbitration hearing at all, after having received proper notice. *See id.* at 4. Based on the evidence that JIB submitted, the arbitrator ultimately found that Respondent violated the CBA, ERISA, and the LMRA by failing to timely remit the Required Contributions for the payroll periods ending May 15, 2019 through September 25, 2019 and by having underpaid its contributions for three particular weeks in 2018. *Id.* at 5. Thus, the arbitrator crafted a remedy in accordance with the CBA, including awarding Petitioner arbitrator's fees, attorneys' fees and costs, interest, and liquidated damages. *See id.* at 5–6; 2016–19 CBA Article II § 12(a) (providing for remedies set forth in 29 U.S.C. § 1132(g)); Arbitration Procedures Article X.B, X.D; Collection Policy Article II.E.1–2; Sessa Decl. ¶¶ 17, 21–22; Resp't

56.1 ¶¶ 17, 21–22.

Although the arbitrator did not provide extensive analysis regarding his award, an "arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case[.]'" *D.H. Blair*, 462 F.3d at 110 (quoting *Barbier*, 948 F.2d at 121). Further, "even where it is unclear what formula or percentage the arbitrator used in reaching an amount, if the court can infer that the arbitrator had some basis—documentary, testimonial, or otherwise—on which to determine the amount . . . that amount should be awarded." *Pomalee*, 2018 WL 1320689, at *10 (quoting *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labormanagement Cooperation, Pension & Welfare Funds v. Town & Country Wood Flooring LLC*, No. 13-CV-0040 (JS) (WDW), 2013 WL 4807110, at *7 (E.D.N.Y. Sept. 9, 2013)). Here, it is apparent that the arbitrator based his decision on the terms of the CBA, the Collection Policy, and the Arbitration Procedures that bound the parties and that he based his calculations on the documentary evidence that JIB submitted—and to which Respondent did not object.

After having failed to appear at the arbitration hearing, Respondent now raises several challenges to the arbitrator's award. However, Respondent waived the right to raise these challenges by failing to appear at the arbitration hearing. *See Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Rodrigue*, No. 13-CV-5760 (JS) (SIL), 2017 WL 9280115, at *4 (E.D.N.Y. Jan. 25, 2017) ("[B]y failing to attend the properly noticed arbitration [respondent] forfeited whatever rights he may have had to challenge the Arbitration Award on the[] underlying issues."), *report and recommendation adopted by* 2017 WL 1180513 (E.D.N.Y. Mar. 29, 2017); *Allied Int'l Union v. Tristar Patrol Servs., Inc.*, No. 06 Civ. 15515 (LAP), 2007 WL 2845227, at *4 (S.D.N.Y. Sept. 26, 2007)

("[A]ssuming *arguendo* that Respondent's substantive challenges to the Award have some merit, they were waived by its failure to appear at the [arbitration] hearing."); *see also N.Y. Hotel & Motel Trades Council, AFL–CIO v. Hotel St. George*, 988 F. Supp. 770, 778 (S.D.N.Y. Dec. 31, 1997) (quoting *York Research Corp. v. Landgarten*, 927 F.2d 119, 122 (2d Cir. 1991)) ("[P]ermitting a party to oppose confirmation of an award based on a claim that it did not raise before the arbitrator would . . . offend the general principle that a party 'cannot remain silent, raising no objection during the course of the arbitration proceedings, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.'").[7]

Moreover, two of Respondent's substantive arguments fail on the merits. First, Respondent now claims that Petitioner had a policy of waiving liquidated damages. *See* Falesto Decl. ¶ 3; Rabinowitz Decl. ¶ 5; Resp't 56.1 ¶¶ 20, 22. However, it has not provided me with any direct evidence of such a policy, nor has it offered any argument whatsoever as to how such a policy applies to the liquidated damages awarded in this case. *See* Resp't Br. 3–4. Given that my review of the arbitrator's award is "highly deferential[,]" Respondent has not provided me with nearly enough to warrant a modification based on a supposed policy of Petitioner to waive liquidated damages. *NFL*, 820 F.3d at 532. Second, Respondent asserts that it did not employ any Union employees after July 31, 2019, and, as such, the arbitrator should not have awarded contributions— or the associated interest and liquidated damages—for payroll weeks ending after that date. *See* Falesto Decl. ¶¶ 9–11; Rabinowitz Decl. ¶ 5; Resp't 56.1 ¶ 29; Resp't Br. 4. In support of this assertion, Respondent has submitted an e-mail from Jeanette Delvalle, wherein she states that "the

---

[7] Respondent does not argue that it lacked proper notice of the arbitration hearing, and the arbitrator found that it had proper notice. *See* Arbitrator's Opinion & Award 4. In addition, I find that the notice that Respondent received, *see* Notice; Prehearing Mem. of Law; Sessa Decl. ¶¶ 26–27; Resp't 56.1 ¶¶ 26–27, complied with the Arbitration Procedures, *see* Arbitration Procedures Articles IV, VI.

last time an employee in [the Union] was paid was on 7/31/19 (see below)[.]" Delvalle E-mail. This e-mail also includes what appears to be an excerpt from a payroll company employee to Delvalle stating the same. *See id.* Even assuming that this e-mail is admissible evidence, it does not provide me with a basis upon which I can modify the arbitrator's award. Because Respondent did not submit payroll reports for the weeks ending August 7, 2019 through September 25, 2019, Petitioner presented the arbitrator with estimates of the contributions that Respondent owed for those weeks based on the prior week's payroll report. *See* Arbitrator's Opinion & Award 4 n.3; Breakdown 1 (indicating that contributions owed for weeks ending August 7, 2019 through September 25, 2019 were estimated). The arbitrator correctly concluded that "[t]he documents establishing the various Plans specifically allow the JIB to estimate an employer's contribution obligation in the event the employer does not submit payroll reports as required": the Collection Policy expressly provides that "[w]hen an employer fails to remit Contributions and has not submitted payroll reports for such unpaid Contributions, [JIB] may use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer." Arbitrator's Opinion & Award 4 n.3; Collection Policy Article II.F.1; Sessa Decl. ¶ 20; Resp't 56.1 ¶ 20. Thus, the arbitrator's award, with respect to the contributions owed for payroll weeks ending after July 31, 2019, "draws its essence from the collective bargaining agreement[.]" *NFL*, 820 F.3d at 537 (quoting *Niagara Mohawk Power Corp.*, 143 F.3d at 714).

Still, I make two modifications to correct errors reflected in the arbitrator's award based on arguments that Respondent has raised. *Cf. Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Jessica Rose Enters. Corp.*, No. 15-CV-9040 (RA), 2016 WL 6952345, at *3 (S.D.N.Y. Nov. 28, 2016) (confirming arbitration award when "[n]o evidence suggest[ed]" that amount awarded was "incorrect"). First, Respondent asserts that the arbitrator awarded legal fees

and costs that are duplicative of those awarded in a prior arbitration. *See* Falesto Decl. ¶ 13; Resp't Br. 4. Petitioner concedes that this portion of the award was, in part, duplicative. *See* Pet'r Reply 6–7. Specifically, the arbitrator awarded $22,014.96 in attorneys' fees, arbitration fees, administrative fees, and costs. *See* Arbitrator's Opinion & Award 6. However, as Petitioner concedes, Petitioner incurred only $3,650 in fees and costs in connection with the 2019 arbitration at issue in this case. *See* Breakdown 1; Pet'r Reply 6–7. This $3,650 consisted of a $1,400 arbitrator's fee, a $250 administrative fee, a $600 attorney fee, and an additional $1,400 arbitrator's fee for the September 17, 2019 hearing that the arbitrator adjourned at Respondent's request. *See* Breakdown 1; Arbitration Procedures Article X.D; Arbitrator's Opinion & Award 3 n.2; Pet'r Reply 6–7. Much of the remainder of the fees and costs that the arbitrator awarded appears to be attributable to prior arbitrations in 2017 and 2018, *see* Breakdown 1, though I note that neither Respondent nor Petitioner has provided me with a complete accounting of this remainder, *see* Pet'r Reply 6–7 (accounting for only $6,950 in duplicative fees and costs); Resp't Br. 4 (setting forth only the conclusory argument that "the award includes amounts subject to a prior, confirmed arbitration award"); *see also* Breakdown 1 (accounting for $20,614.96 in fees and costs and not the full $22,014.96 that the arbitrator awarded). Nonetheless, because it is clear that Petitioner incurred only $3,650 in fees and costs in connection with the 2019 arbitration, and because Petitioner concedes as much, I modify the arbitrator's award to reflect a total of $3,650 in attorneys' fees, arbitration fees, administrative fees, and costs.

Second, I modify the liquidated damages award. The breakdown of amounts owed that Petitioner submitted in the arbitration hearing includes $79,761.19 in "audit deficiencies" owed for a period spanning from January 2014 through March 2017. Breakdown 1, 3. However, in the arbitration hearing, Petitioner asked the arbitrator not to include this deficiency—or interest

17

thereon—in the award. *See* Arbitrators Opinion & Award 4–5. The arbitrator did not, in fact, include the $79,761.19 audit principal in his award, nor does it appear that he awarded interest on the audit principal. *Compare id.* at 6 (listing principal amounts and interest awarded), *with* Breakdown 1 (demonstrating that "audit deficiencies" and "audit interest" were not included in award). In the instant action, Respondent asked Petitioner to confirm that it does not seek to recover the audit deficiencies—as, according to Respondent, they comprised part of a prior arbitration award, and to award them here would be duplicative. *See* Falesto Decl. ¶ 12. Petitioner confirmed that it does not seek to recover the principal amount of the audit deficiencies and that such amount did not comprise part of the arbitrator's award. *See* Second Sessa Decl. ¶ 2; Pet'r Reply 5. However, the arbitrator did erroneously award $15,952.24 in liquidated damages calculated based on the audit deficiencies. *See* Breakdown 2 (calculating 20% of the $79,761.19 "audit balance" as $15,952.24 and then including the latter figure as part of the $101,529.23 in total liquidated damages); Arbitrator's Opinion & Award 6 (awarding $101,529.23 in liquidated damages). Petitioner concedes as much in the letter that it filed in response to my inquiry about the arbitrator's liquidated damages calculation. *See* Order, June 25, 2020; Pet'r's Letter, June 29, 2020, ECF No. 36. Thus, I modify the arbitrator's liquidated damages award to exclude the $15,952.24 associated with the audit deficiencies, so that it totals $85,576.99.[8]

Thus, I confirm the arbitration award with the two modifications discussed above.

## II.    Petitioner is entitled to recover reasonable attorneys' fees and costs associated with the instant petition.

---

[8] In its letter, Petitioner asserts that the appropriate total amount of liquidated damages is $85,439.29. *See* Pet'r's Letter. However, this figure appears to exclude the $137.70 in liquidated damages that the arbitrator awarded based on the 2018 contribution shortages for payroll weeks 27, 33, and 38. *See* Breakdown 1–2 (calculating $688.50 in shortages for those weeks and including 20% of those shortages in liquidated damages calculation). Because neither party has presented me with a basis on which to modify the liquidated damages award to exclude this $137.70, I decline to do so.

Petitioner seeks reimbursement for attorneys' fees and costs associated with the instant petition in the amount of $19,045.99. *See* Marimon Decl. in Further Supp. of Pet'r's Mot. to Confirm Arbitration Award ¶ 11, ECF No. 32; Pet'r Reply 7. Section 301 of the LMRA does not authorize the award of attorneys' fees in an action to confirm an arbitration award. *See Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. CEI Contractors, Inc.*, No. 18-CV-3467 (JFB) (GRB), 2019 WL 117603, at *4 (E.D.N.Y. Jan. 7, 2019) (citing cases). Further, while ERISA § 502(g) provides for an award of reasonable attorneys' fees and costs "to a plan that prevails in an action to recover delinquent contributions under a collective bargaining agreement," this provision does not necessarily entitle a petitioner to attorneys' fees and costs associated with bringing a petition to confirm an arbitration award. *Id.* (citing 29 U.S.C. § 1132(g)(2)(D) and quoting *Abondolo v. Jerry WWHS Co.*, 829 F. Supp. 2d 120, 130 (E.D.N.Y. 2011)); *see Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. Excel Installations, LLC*, No. 19-CV-3012 (ERK) (SMG), 2020 WL 429135, at *4 (E.D.N.Y. Jan. 27, 2020). However, courts in this circuit have held that a petitioner in an action to confirm an arbitration award is entitled to attorneys' fees and costs when the respondent "refuses to abide by an arbitrator's decision without justification." *CEI Contractors*, 2019 WL 117603, at *4 (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund v. E. Millenium* [sic] *Constr., Inc.*, No. 03 Civ. 5122 (DAB), 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)); *see Excel Installations*, 2020 WL 429135, at *4; *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013).

In this case, I do not need to decide whether Respondent refused to abide by the arbitrator's

decision without justification because the governing policies to which the parties agreed call for an award of attorneys' fees and costs. *See CEI Contractors*, 2019 WL 117603, at *4. The Arbitration Procedures provide that Petitioner is entitled to recover attorneys' fees and costs incurred in a court action to enforce an arbitration award. *See* Arbitration Procedures Article II.E. Further, the CBA provides that, "in an action or proceeding to collect delinquent contributions[,]" an employer "shall be liable for the remedies under Section 502(g)(2) of ERISA[.]" 2016–19 CBA Article II § 12(a); *see* Sessa Decl. ¶ 17; Resp't 56.1 ¶ 17. The Collection Policy also provides that "[o]nce legal action is commenced, a delinquent employer shall . . . be liable for . . . additional attorney's fees and costs incurred." Collection Policy Article II.E.2; *see* Sessa Decl. ¶ 22; Resp't 56.1 ¶ 22.

The attorneys' fees and costs awarded here must be reasonable. *See Trs. of Empire State Carpenters Annuity v. Baroco Contracting Corp.*, No. 15-CV-5690 (DRH) (SIL), 2016 WL 2893239, at *4 (E.D.N.Y. Apr. 19, 2016), *report and recommendation adopted by* 2016 WL 2889007 (E.D.N.Y. May 17, 2016). Accordingly, I conclude that Petitioner is entitled to reimbursement for reasonable attorneys' fees and costs associated with bringing the instant petition. I respectfully refer this matter to United States Magistrate Judge Roanne L. Mann for a Report and Recommendation regarding the appropriate amount of such fees and costs.

## III.    Petitioner's request for prejudgment interest is granted.

Finally, the petition seeks "interest from the date of the [arbitrator's a]ward through the date of judgment[.]" Pet. to Confirm Arbitration Award at 10 ¶ 2. Although the parties do not address Petitioner's request for prejudgment interest in their motion papers, courts in this circuit have recognized "a presumption in favor of prejudgment interest." *Excel Installations*, 2020 WL 429135, at *4 (quoting *Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor*

*Mgmt. Cooperation Funds v. W.B.E. Walls & Ceilings, Inc.*, No. 18-CV-6444 (JFB) (AKT), 2019 WL 2079825, at *3 (E.D.N.Y. May 10, 2019)). In addition, courts in this circuit "have found an award of pre-judgment interest to be appropriate where the agreement between the parties states that an arbitration decision is final and binding." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *3 (S.D.N.Y. Apr. 16, 2007); *see Excel Installations*, 2020 WL 429135, at *4 ("That presumption [in favor of prejudgment interest] generally prevails when the CBA provides that arbitration awards shall be 'final and binding.'"). Here, the Arbitration Procedures provide that an arbitration "award shall be final and binding." Arbitration Procedures Article IX.B. Therefore, an award of prejudgment interest is appropriate. Petitioner does not specify the appropriate rate of prejudgment interest. However, the "common practice" of courts in this circuit "is to grant interest at a rate of nine percent, the rate of pre-judgment interest under New York State law." *Herrenknecht*, 2007 WL 1149122, at *3 (quoting *Serv. Emps. Int'l Union, Local 32BJ v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004)); *see Excel Installations*, 2020 WL 429135, at *4; *CEI Contractors*, 2019 WL 117603, at *4. Thus, I grant Petitioner's request for prejudgment interest, at a rate of nine percent per annum from the date of the arbitration award—October 15, 2019—through the date of judgment in this action. *See Excel Installations*, 2020 WL 429135, at *4; Arbitrator's Opinion & Award 7.

## CONCLUSION

For the reasons discussed above, the petition to confirm the arbitration award is granted with two modifications. The total amount of the award as modified is $578,848.17.

Accordingly, it is hereby ordered that the arbitrator's award is confirmed with two modifications. The Clerk of Court is directed to enter judgment in favor of Petitioner and against Respondent in the amount of $578,848.17, plus prejudgment interest calculated at a rate of 9% per

annum from October 15, 2019, through the date of judgment in this action.

In addition, Petitioner is entitled to recover reasonable attorneys' fees and costs, in an amount to be determined by Magistrate Judge Mann in a Report and Recommendation. Once I receive Judge Mann's Report and Recommendation, objections have been waived or resolved, and the proper amount of attorneys' fees and costs has been finally determined, I will direct the Clerk of Court to enter judgment with respect to attorneys' fees and costs accordingly.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:        July 8, 2020
              Brooklyn, New York