**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
**DR. GERALD R. FINKEL, as Chairman of the Joint**
**Industry Board of the Electrical Industry,**                                      **REPORT AND**
                                                                                    **RECOMMENDATION**

                                              **Petitioner,**                       **19-CV-6260 (ARR)**

               -against-

**ALLSTATE ELECTRIC CORP.,**

                                              **Respondent.**
-----------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

In this action, Dr. Gerald R. Finkel ("petitioner"), as Chairman of the Joint Industry

Board of the Electrical Industry, alleges that Allstate Electric Corporation ("respondent") failed

to remit contributions to certain employee benefit plans required pursuant to collective

bargaining agreements and Section 502(a)(3) of the Employee Retirement Income Security Act

of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3), and Section 301 of the Labor

Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185.  See generally

Petition to Confirm Arbitration Award (Nov. 6, 2019) ("Pet."), Electronic Case Filing ("ECF")

Docket Entry ("DE"), #1.  Petitioner prevailed in arbitration and, when respondent disregarded

the arbitrator's decision, petitioner commenced this action to confirm the arbitrator's award.  See

id.

By Opinion & Order dated July 8, 2020, the Honorable Allyne R. Ross, the district judge

assigned to the case, granted petitioner's motion to confirm the arbitrator's decision, with two

modifications, i.e., reducing the attorneys' fees and liquidated damages awarded by the

arbitrator.  See Opinion & Order (July 8, 2020) ("O & O"), at 1-16, DE #37.  Additionally, the

District Court concluded that petitioner was entitled to reasonable attorneys' fees and costs

associated with bringing the instant petition to enforce the arbitration award, and referred the

determination of the amount thereof to the undersigned magistrate judge.  See id. at 20.  For the

reasons discussed below, this Court recommends that petitioner be awarded $15,202.38 in

attorneys' fees and $515.99 in costs.

## BACKGROUND

The Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-

CIO, entered into collective bargaining agreements ("CBAs") with certain employer associations

that require that signatory employers remit payments to employee benefit plans.[1]  See O & O at

3; 2016-2019 Collective Bargaining Agreement ("CBA"), attached as Exhibit ("Ex.") 1 to

Declaration of Christina Sessa, Esq. ("Sessa Decl."), DE #22-1; 2019 Memorandum of

Agreement, attached as Ex. 2 to Sessa Decl., DE #22-2.  The Joint Industry Board ("JIB")

administers several of these employee benefit, multi-employer plans.  See, e.g., O & O at 2.  The

CBA requires that signatory employers make certain contributions, including ERISA

contributions, to employee benefit plans and collect union assessments from each union member-

employee.  Together, these payments constitute "Required Contributions."  See id. at 2-3.

Signatory employers send Required Contributions, other than Deferred Salary Plan payments, to

the JIB every week and submit associated weekly payroll reports.  See id.

The JIB established a Collection Policy governing the collection of delinquent

---

[1] One CBA covered the period from May 11, 2016 through April 10, 2019.  See O & O at 3. The parties agree that
respondent "is currently bound" by a successor agreement, the terms of which are set forth in the 2016-2019 CBA
and a Memorandum of Agreement dated April 10, 2019.  See id.

contributions, as well as Arbitration Procedures addressing disputes over employer delinquencies and audits. See id. at 4.  The Collection Policy provides that once legal action is commenced to collect delinquent contributions, the delinquent employer is liable for the attorneys' fees and costs incurred. See id. at 5; Collection Policy, Ex. 3 to Sessa Decl., DE #22-3.  The Arbitration Procedures grant jurisdiction to a neutral arbitrator to adjudicate any claims that the JIB brings "against an Employer, related to the employer's obligation to contribute to [employee benefit plans], including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorney's fees and costs[.]" O & O at 12 (quoting art. I.K. to Arbitration Procedures, Ex. 4 to Sessa Decl., DE #22-4).  Pursuant to the Arbitration Procedures, if an arbitrator finds in whole or in part that the employer breached the Collection Policy, the employer is liable for the arbitrator's fees and the JIB's attorneys' fees and costs. See O & O at 4.  Moreover, the CBA specifies that, if there is a judgment against the employer in an action or proceeding to collect delinquent contributions, the employer is liable for remedies under Section 502(g)(2) of ERISA, including "reasonable attorney's fees and costs of the action to be paid by the defendant."  See O & O at 5-6; CBA at 17.

In this case, petitioner initiated arbitration after respondent failed to remit its Required Contributions beginning with the payroll week ending May 15, 2019.  See, e.g., O & O at 6. At the arbitration hearing—during which respondent never appeared, despite its earlier request for an adjournment until the date the arbitration occurred—petitioner submitted a breakdown detailing the contributions that respondent owed for the weeks ending May 15, 2019, through September 25, 2019.  In an October 15, 2019 decision, the arbitrator concluded that respondent was liable in the amount of $613,165.37.  See O & O at 8; Arbitration Award, Ex. 8 to Sessa

3

Decl., DE #22-8. When respondent failed to abide by the arbitrator's decision, petitioner moved to confirm the award. See Pet.

Following motions practice, the District Court confirmed the arbitration award with the two modifications referenced above.[2]  Additionally, relying on the language of the Collection Policy and CBA, Judge Ross concluded that petitioner is entitled to an award of reasonable attorney's fees and costs in connection with this litigation. See O & O at 20.  Judge Ross referred the matter of an appropriate amount of such fees and costs to the undersigned magistrate judge. See id.

## DISCUSSION

I.    **Attorneys' Fees and Costs**

A.    **Attorneys' Fees**

In the instant case, the governing policies to which the parties agreed, including, *inter alia*, the Arbitration Procedures, Collection Policy, and CBA, obligate an employer that fails to make timely, required contributions to pay the attorneys' fees and costs incurred in recovering the delinquent contributions. See O & O at 20.  As Judge Ross concluded, these agreements are a sufficient basis on which to award attorneys' fees and costs in connection with enforcing the arbitration decision. See O & O at 5-6; Trs. of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. CEI Contractors, Inc., No. 18-CV-3467 (JFB) (GRB), 2019 WL 117603, at *4 (E.D.N.Y. Jan. 7, 2019) (Bianco, J.) (citing cases).

Petitioner bears the burden of establishing the reasonableness of the fees sought. See

---

[2] Specifically, Judge Ross reduced the arbitrator's award of legal fees and costs from $22,014.96 to $3,650, see    O & O at 17, and reduced the liquidated damages award from $101,529.23 to $85,576.99, see id. at 20.

4

Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).  In considering an application for

attorneys' fees, the Court must first determine the presumptively reasonable fee.  See Arbor Hill

Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir.

2008).  This presumptively reasonable fee - or lodestar[3]- is essentially "'what a reasonable,

paying client would be willing to pay,' given that such a party wishes 'to spend the minimum

necessary to litigate the case effectively.'"  Simmons v. New York City Transit Auth., 575 F.3d

170, 174 (2d Cir. 2009) (quoting Arbor Hill, 522 F.3d at 190).

Courts can and should exercise broad discretion in determining a reasonable fee award.

See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in

making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's

"considerable discretion").  The method for determining reasonable attorneys' fees in this Circuit

is based on a number of factors, such as the labor and skill required; the difficulty of the issues;

the attorney's customary hourly rate; the experience, reputation and ability of the attorney; and

awards in similar cases.  See Arbor Hill, 522 F.3d at 186 n.3, 190.  In particular, when assessing

an attorney's requested hourly rate, courts typically consider other rates awarded in the district in

which the reviewing court sits.  This is known as the "forum rule."  See Simmons, 575 F.3d at

174-75 (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We

presume, however, that a reasonable, paying client would in most cases hire counsel from within

his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the

---

[3] The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate.  See Arbor Hill, 522 F.3d at 189.

number of hours reasonably expended, in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190.  With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit."  N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).  The Court must review these time records and the hours an attorney billed in order to determine the reasonableness of such and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours."  Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010); see Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994).

In response to petitioner's fee application, respondent cites Magistrate Judge Robert Levy's opinion in a recent litigation between the same parties, see Respondent[']s Rule 56.1 Statement ¶ 28, DE #28  (citing *In re* Arb. Between Finkel & Allstate Elec. Corp., 18 CV 3798 (CBA)(RML), 2020 WL 1864877 (E.D.N.Y. Apr. 14, 2020)), but does not otherwise particularize respondent's objections to the amounts sought in this case.  (In the cited case, Judge Levy reduced both the hourly rates and hours billed.)

*1.    Hourly Rates*

Petitioner seeks to recover for the time expended by four Virginia & Ambinder, LLP ("V & A") attorneys and three "legal assistants" (presumably paralegals) on this matter: two partners at a rate of $350.00 per hour, two associates at a rate of $275.00 per hour, and three legal assistants at a rate of $120.00 per hour.  See Declaration of Nicole Marimon ("Marimon Decl.") ¶¶ 1-7, DE #32.  Charles Virginia is a founding partner of V & A and has over twenty

years of experience litigating ERISA matters. see id. ¶ 4.  Nicole Marimon, a partner at V & A, is

a 2014 law school graduate and has regularly served as lead counsel on ERISA matters since her

admission to the bar, see id. ¶ 3; Adrianna Grancio is an associate and 2016 law school graduate,

see id. ¶ 5; and Marlie Blaise is an associate, who graduated from law school in 2018, see id. ¶ 6.

No background information is provided on any of the three legal assistants who performed work

on this case.  See id. ¶  7.

Typically, in similar ERISA matters, courts in the Eastern District of New York award

fees in the range of $200 to $400 per hour for partners, $200 to $375 per hour for senior

associates, and $100 to $150 for junior associates.  See Gesualdi v. Interstate Payroll Co., Inc.,

No. 2:14-CV-06780 (ADS)(SIL), 2019 WL 109379, at *8 (E.D.N.Y. Jan. 4, 2019) (collecting

cases).  While Mr. Virginia's requested rate is reasonable given his significant experience with

ERISA litigation, see, e.g., Trs. of Local 522 Pension Fund v. Consol. Cos., No. 17-CV-1991

(KAM) (CLP), 2018 WL 2078117, at *9 (E.D.N.Y. Feb. 6, 2018) (finding $350 to be a

reasonable hourly rate for two partners with 14 and 24 years of experience), adopted, 2018 WL

1521775 (E.D.N.Y. Mar. 27, 2018), the rates requested for the other V & A attorneys are on the

higher end of the range usually awarded in ERISA matters in this District, see Trs. of Ne.

Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v.

Excel Installations, LLC, No. 19-CV-3012 (ERK) (SMG), 2020 WL 429135, at *5 (E.D.N.Y.

Jan. 27, 2020) (approving a $300 hourly rate for Ms. Marimon's work as a partner); Trs. of

Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill

Improvement & Safety Funds v. Shelbourne Constr. Corp., No. 19-CV-2312 (ARR)(PK), 2020

WL 1668041, at *8 (E.D.N.Y. Mar. 5, 2020), adopted, 2020 WL 1666461 (E.D.N.Y. Apr. 3,

2020) (awarding $250 per hour for Ms. Grancio's work); In re Arb. Between Finkel & Allstate,

2020 WL 1864877, at *4 (awarding a rate of $300 per hour for Ms. Marimon and $200 per hour

for a first-year associate).  Accordingly, this Court recommends that the requested hourly rates

be awarded as follows:

| Attorney | Requested Rate | Recommended Rate |
|---|---|---|
| Charles Virginia | $350 | $350 |
| Nicole Marimon | $350 | $300 |
| Adrianna Grancio | $275 | $250 |
| Marlie Blaise | $275 | $225 |

In addition, petitioner requests a rate of $120 per hour for the work of legal assistants,

whose backgrounds are not described.  See Marimon Decl. ¶ 7.  This Court recommends a

modest reduction of that rate to $100 per hour.  Compare Trs. of Ne. Carpenters Health, Pension,

Annuity, Apprenticeship & Labor-Mgmt. Cooperation Funds v. Tiki Indus., Inc., No. 20-CV-492

(DRH)(AKT), 2020 WL 4927430, at *3 (E.D.N.Y. Aug. 21, 2020) (awarding $100 per hour for

V&A legal assistants); with In re Arb. Between Finkel & Allstate, 2020 WL 1864877, at *4

(granting $90 per hour for V&A legal assistants).

        2.       *Hours Billed*

Petitioner's counsel seek compensation for 66.1 hours on this matter.  See Marimon Decl.

¶ 9.  Petitioner submitted counsel's contemporaneous billing records, which contain a description

of the services provided and the amount of time spent.  See History Bill, Ex. 1 to Marimon Decl.,

DE #32-1.  A review of the records reflects that petitioner seeks recovery for some unnecessary

charges.  To address these issues, this Court recommends an across-the-board reduction of

billable hours.

When reviewing a fee application, a court must exclude hours that are unreasonable from the lodestar calculation.  See Coley v. City of New York, No. 15-CV-5132(KAM)(LB), 2017 WL 1162177, at *4 (E.D.N.Y. Mar. 28, 2017) (citations omitted).  Though respondent failed to object to specific aspects of petitioner's billing, this Court's review of petitioner's fee application revealed some excessive time charges.  For example, while it is "the custom in this Circuit to bill travel time at half of the regularly hourly rate," Hernandez v. NJK Contractors, Inc., No. 09-CV-4812 (RER), 2015 WL 5178119, at *3 (E.D.N.Y. Sept. 3, 2015) (collecting cases), counsel's travel time to and from court was billed at 100 percent of counsel's applicable rate, rather than at the appropriate 50 percent rate, see History Bill at 3.  Similarly, in April and May 2020, Ms. Marimon, a partner, expended significant time drafting motion papers, the kind of work usually performed by, and more appropriately billed at the rate of, more junior attorneys.  See id. at 6; Callari v. Blackman Plumbing Supply, Inc., CV 11-3655 (ADS) (AKT), 2020 WL 2771008, at *12 (E.D.N.Y. May 4, 2020) (collecting cases), adopted, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).

In evaluating fee requests, courts "need not, and indeed should not, become green-eyeshade accountants."  Fox v. Vice, 563 U.S. 826, 838 (2011).  Where a party includes unnecessary hours in its fee application, the Court may, rather than engage in a line-by-line reduction of the billing records, make an across-the-board reduction in billable hours.  See Green v. City of New York, 403 F.App'x 626, 630 (2d Cir. 2010); Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).  Such an approach is particularly appropriate where, as here, counsel's timesheets include block billing.  See Green, 403 F.App'x at 630.  Accordingly, this Court recommends applying a five-percent reduction in the number of hours billed.  See Trs. of the

Local 7 Tile Indus. Welfare Fund v. EAQ Constr. Corp., 14-CV-4097(SJ)(CLP), 2016 WL
4540306, at *15 (E.D.N.Y. Aug. 12, 2016), adopted, 2016 WL 4536866 (E.D.N.Y. Aug. 30,
2016) (applying a 30% reduction for insufficient submissions and redundancies); Gesualdi v.
Stallone Testing Labs., Inc., No. 10-CV-646 (ENV)(LB), 2011 WL 2940606, at *1 (E.D.N.Y.
July 19, 2011) (overruling objections and adopting recommendation to apply a 50% reduction to
fees for errors and poor drafting).

### 3.    *Presumptively Reasonable Fee*

Applying the reduced hourly rates described above and the five-percent reduction to the
hours claimed, this Court recommends awarding petitioner attorneys' fees of $15,202.38, as set
forth below:

| Attorney | Reduced Hourly Rate | Reduced Hours | Fee |
|---|---|---|---|
| Charles Virginia | n/a | .095 | $33.25 |
| Nicole Marimon | $300 | 30.875 | $9,262.50 |
| Adrianna Grancio | $250 | 13.965 | $3,491.25 |
| Marlie Blaise | $225 | 5.035 | $1,132.88 |
| Legal Assistants | $100 | 12.825 | $1,282.5 |
| **Total** | | | **$15,202.38** |

### B.    Costs

Section 502(g)(2) of ERISA provides that in any action brought by a fiduciary on behalf
of a plan in which judgment in favor of the plan is awarded, the court shall allow "costs of the
action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D).  Petitioner requests $515.99 in
costs, representing a $400 filing fee, $70 for service of the complaint, and various charges for

postage and research.  See Marimon Decl. ¶ 10.  These costs are largely reasonable.  Therefore,

the Court recommends that petitioner be awarded costs in the amount of $515.99.

## CONCLUSION

For the foregoing reasons, this Court recommends that petitioner be awarded $15,202.38

in attorneys' fees and $515.99 in costs.

Any objections to the recommendations contained herein must be filed with Judge Ross

on or before October 15, 2020.  Failure to file objections in a timely manner may waive a right to

appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small

v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

The Clerk is requested to enter this Report and Recommendation into the ECF system.


**SO ORDERED.**

**Dated:    Brooklyn, New York**
**          October 1, 2020**


/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

11